We'll hear from Mr. Gould. Good morning and may it please the court. Andrew Gould for the Tapias. I'd like to reserve five minutes for rebuttal. Two things should be undisputed in this appeal. First, the district court granted summary judgment on one ground and one ground alone, proximate causation. And second, the district court's approximate cause analysis was wrong. Its conclusion rested on a dissenting opinion, mistaking that dissent's new and intervening cause rationale for a holding. Now, in this appeal, Union Pacific does not deny the first point. And truth be told, it really doesn't seem to deny the second point either. Instead, what it does is it invites this court to reimagine the court's analysis. This court should decline that invitation, which would only invite further legal error. Mr. Gould, why didn't you move for reconsideration in the district court? I mean, we all know Judge Lake, and I would think if an error of the magnitude that you suggest would have been sufficient reason for him to change his reasoning. Sure. Your Honor, we didn't move for reconsideration. We thought it was appropriate to just move immediately to the appeal. I understand . . . Well, I don't think that's very considerate of the district court. Well, but respectfully, Your Honor, in our view, it's not required that we move for reconsideration. Certainly, if there was, we could have done that. But given the magnitude of the error, we thought it was appropriate. Well, if it had been the judge that you clerked for, it probably would have been welcomed. That's true. That's true, Your Honor. Our court welcomes reconsiderations that say we made an obvious error. So anyway, I caution you for the future, at least. And I thank Your Honor for that. And that's well taken. You know, we are here now based on this record, and the question really is, what do we do with this opinion? And I think there is common ground that we find with Judge Lake's opinion, which is that riddle is applicable. We agree. Riddle is applicable. But it's the majority opinion that applies. And there, in riddle, the facts were that a flag man was standing on the tracks as the train came by. He deliberately, which is actually a difference from this case, he deliberately walked off the tracks. And then as the train came closer, about 100 feet away, he, with deliberation, walked back onto the track, apparently to pick up something. And that's when he was struck. Well, the Union Pacific does distinguish riddle. First of all, it says that nobody debated the standard, which is that if the plaintiff created the problem that couldn't be remedied, you know, there is no proximate cause. But looking at the video here, number one, it looks very similar to what may have happened. Pardon me. The difference in riddle is that the flag man knew the rules. And the flag man knew that when he was there, the train was supposed to stop. That's true, Your Honor. But I would say, in some sense, this goes back to one of the ways that my friend tries to distinguish riddle and the rule. They say, well, in riddle, he was permitted to be there. And no case recognizes such a distinction. In fact, that's refuted directly by Russell, which is the Texas Commission on Appeals opinion adopted by the Texas Supreme Court, which says the duty to keep an ongoing lookout is not dependent upon whether somebody is permitted to be on the train. Truth be told, it actually also is contradicted by the riddle dissent, because even the dissenting justice, Justice Stanford, in riddle, as he's talking about his rule about whether or not somebody should have been there, he refers to the flag man, quote, or anyone else standing on the track. You know, here, it's a question of fact for the jury as to how the girls reacted in that moment. And really, Your Honor, I think it goes more— Well, both of them cleared the tracks. Respectfully, I disagree that the—well, certainly her friend unquestionably cleared the tracks. I disagree with my friend that the record conclusively shows that Avery cleared the tracks. Oh, I don't think there's any doubt about that. Well, so what you see, Your Honor, and— It may not have been—she may have been just past the tie, but I don't think it's— Yeah, and yes, forgive me, let me be more precise. If you look at the video, she was past the tie. That doesn't mean that she was clear with respect to that she wouldn't have actually been hit by the train. But even putting that to the side, what we're talking about is mere seconds. Even Union Pacific agrees, and this is at response brief 20, that we're talking about a single second in which she crossed back into the pathway of the train. Every single second mattered. And that's our argument here is that had—I'm sorry. No, go ahead. Had they been keeping a proper lookout, which they were not at the time, or at least there's a genuine issue of material fact as to whether they would, because again, if you look at the interior video, you see one of them is looking to the left, not looking straight ahead. The other is distracted in conversation. We've argued that for the video, they would have been visible at the 47-second mark. Again, maybe a jury doesn't agree with me, but taking the facts in the light most favorable to the record— Why don't you have to show the two-seconds difference in activating the bell would have made a difference in their conduct? But the point is they both heard the bell because— or the whistle or whatever you call it— because they both reacted almost instantaneously after that whistle sounded. Absolutely, Your Honor. I completely agree with you. So why would two seconds longer have caused the plaintiff not to go back on the track? Because in those two seconds, had they activated it— so let's take Union Pacific's version as true, right? At 47 seconds, they see her. If you look at the video, it takes about one to two seconds for him to hit the emergency bell. So 49 seconds. That gives eight seconds out, which she could have been, in that time, completely clear of the track. So you're saying it would have been okay for her to go back across the tracks? Whether it's back toward where her friend was or whether it was to the opposite side, just to get clear of the tracks. But in many respects, Your Honor, this is a question that goes toward duty of care, not proximate causation, which is what the district court ruled on. From a foreseeability standpoint, again, I mean, if we look at Riddle, they argued— the railroad argued in Riddle that this was unforeseeable, right? And that's the whole point of the dissenting opinion. The dissenting justice describes this as a new and intervening cause and a sole proximate cause. But the majority rejected that and found and affirmed a jury verdict. I mean, if you look at these railroad cases like Riddle, they're arising traditionally from jury trials, recognizing that these are genuine issues of material fact to decide. Your Honor, about the one to two seconds, just to go back, you know, if you look at the— I believe it's Creech v. Thompson. I might have the second name wrong, but it's definitely the Creech case from the Texas Supreme Court. Even that case discusses about the timeliness in the one to two seconds and how it's for a jury to decide. And again, we're not here necessarily saying that a jury is going to side with us. All we're here saying is that if you take the— if you view the facts in the light most favorable to us, as is required on summary judgment in this record, foreseeability, proximate cause, isn't an issue. And so based on the district court's erroneous analysis when it comes to proximate causation, as we said, this court's general rule is to go no further. It's to reverse and allow the district court to address the unaddressed issues on reappearance. But duty is a question of law, so that would be amenable to our ruling on it. So it can be a question of law. Sometimes it can be dependent on the facts. And so one of the reasons why we think that it would be inappropriate for this court to rule is that the record here is severely underdeveloped. If you look at all the other cases, even the ones from the Southern District of Texas where they are affirming— actually, where they're granting summary judgment, you have full records there with depositions. We don't have that here. And so we think the appropriate course instead is to send it back to the district court. Why do you say—I mean, why do you think that the district court wouldn't grant summary judgment based on the Thompson case? Based on the Thompson case? SISTI v. Thompson. Yeah, so I think because SISTI versus—thank you. SISTI v. Thompson requires a timely warning. That's part of the argument, or part of the rule in SISTI. And so we would argue that there's a genuine issue of material fact as to the timeliness. Now, SISTI also arose from a jury trial. It reversed and rendered because there was no jury instruction on the discovered peril doctrine. But it wasn't a grant of summary judgment. Obviously, we fully recognize that it could go back to the district court, we could conduct discovery, and the district court might come back and say, there was no— What kind of fact would change the ruling on duty? Where one has discovered some distance ahead of a train and a timely warning is given, those in charge can presume such a person is in possession of all his faculties and he will leave the track and place himself beyond the reach of danger. And I know, leave aside timeliness, because I think that I personally— I have my own personal opinion about that. But anyway, duty is still a question of law. It is, but I think it would still be informed by the facts with respect to— All right. On the timeliness issue. And so if we were to go back— One of the things that we don't have in this record, for example, that Union Pacific, when it snapped, moved for summary judgment in this case, they did submit a couple of affidavits from managers. We don't have affidavits from either of the crew members in this case. Maybe if there had been affidavits from the crew members talking about what they were doing in that moment, what they foresaw, what the history was of this particular area, maybe that would be a different case. But they didn't move for that. And so what we are saying is, if it were to go back on summary— excuse me, if it were to go back to the district court, we would have a— we would seek a full record, depositions of both the— of both of the crewmen. There would be discovery into kind of the history of this stretch in Memorial Park. Just to kind of elucidate what was going on at that moment for these trainmen. And so— Can I ask a question? Yes, please. Before your time expires, I want to make sure we get to the— the last point in your reply, Reif, is we should certify the question. Sure. Which I was wondering, as I was reading through all of this, given that the cases we're talking about, you would think that this would be a relatively developed area of law, but we seem to be having a disagreement about cases from 1925 and 1950. If we were to certify, what would be the nature of the certification in your review? Because obviously there's lots of questions in the case. Yeah, so, Your Honor, obviously, you know, the question that we posed is more about the— what they've argued under 75-007 of the Civil Practice and Remedies Code. Their argument is that that applies broadly. It applies to both ordinary negligence claims as well as premises liability claims. We think that that is— would be kind of— that's the key— I mean, we obviously have a view of what the law holds on this, but we would at least acknowledge that there is dispute on that. So we think that would probably be the certified question. Of course, you know, it's up to this Court's discretion as to what to do, but, you know, we put that in our reply brief, but I would go back to kind of how we ended the reply brief with respect to the certification, which is, you know, under Texas Rule of Appellate Procedure 58.1, you're supposed to certify if the issue is determinative, and really, you know, here we're talking about duty of care, and the District Court didn't reach it, and so we think the proper course, again, would be to send it back, let the District Court rule on this with the benefit of a full record. Again, whether— Well, let's— Let's briefly ask you about this Civil Practice Code Section 7507B because it was argued to the District Court on summary judgment, right? It was. So therefore, it would be within our compass to consider it on appeal, and I find it very difficult for—to conceive how these young ladies were not trespassers. So, and my time is about to expire. No, you can answer. So, we think that based on the record, and we did dispute in our summary judgment response that, you know, they were trespassers. We simply just said, even assuming that they were, but you'd go back to whether or not they were licensees, what Union Pacific knew about that area with the pathway, whether they allowed people to go, but—Trespassers are trespassers. But even if they're trespassers, Your Honor, then that would only, in our view, that would only go to one of our three theories of duty. You know, there's—they arise in sequential fashion. There's the first, which is the failure to actively warn of— excuse me, the failure to warn of active train lines, like signage. That's a premises liability claim. No question about it. If 7507 applies, it applies to that claim. It does not, however, apply to the ordinary negligence claims, the theories of second, that they failed to keep an adequate lookout, and third, that upon discovery, that they failed to use all reasonably available means to prevent injury. Those are pure negligent activity claims for which 7507 does not apply. I recognize my friends at Union Pacific have a different view, but we see it differently. Okay. You have a chance for rebuttal. Thank you, Your Honors. Mr. Ballinger. Thank you, Your Honors. May it please the Court. Scott Ballinger for the Union Pacific Railroad. The district court correctly recognized at ROA 200 that under Texas law, quote, railroads are expected to foresee harm to persons who do not receive enough warning to get out of the way, and they are expected to foresee harm to persons who make sudden, startled movements when a train comes very close with no warning. They are not expected to foresee harm to persons who deliberately try to cross the train's path at the last second. That is an unassailably correct statement of Texas law. What are you citing? The Sisti case, Your Honor. Oh, right. And appellants criticize the district court for also relying on some independent intervening cause language from a dissent in the Riddle case. We do agree that independent intervening cause is the wrong label for the foreseeability problem here, but this court can just disregard that language. At most, it's an alternative holding. The district court's separate explanation at ROA 200 that the railroad was not required to foresee this danger is more than enough to require summary judgment in this case, and what the Riddle dissent had to say about foreseeability is black letter Texas law, as the Sisti case makes clear, and as has been applied very recently in the Barnes and the Areola cases as well. Now, obviously, Your Honor has watched the video, and I'm glad. This accident played out over less than 10 seconds. The train crew was keeping a good lookout, and the engineer blew the horn almost immediately after they became visible. I think you will conclude from the tape, and you are entitled to trust your own eyes under Scott v. Harris, that these girls, no reasonable fact finder could find that these girls became visible any earlier than 50 seconds at the earliest, and 50 seconds is generous. They were standing next to some kind of electrical substation covered in graffiti, which created a very complicated visual backdrop. At 50 seconds, you can sort of pick out her friend's white sweatshirt if you run the tape in reverse and you know exactly what you're looking for in retrospect. At 51 seconds, only one second later, the engineer has seen them, and his hand is moving toward the horn. Plaintiffs tried to back that timeline up to 47 seconds because the engineer glanced sort of to the right at that point. Of course, the train was approaching what they describe as a sharp right-hand bend at that point, and also, of course, he's entitled to and supposed to maintain a general awareness of his entire surroundings, not just laser-focused at one angle. As they come around that curve, his eyes turn back to the center and the engineer promptly blew the horn as soon as he possibly could have. The videotape shows that she had plenty of time to get out of the way. She just made a tragic decision to turn back to the left, and we're not talking about one or two seconds here in any event. She could not possibly have made it back across, even if the engineer contrary to Texas law and all of the principles of the SISTI case and everything else, even if the engineer had locked the brakes immediately upon seeing her, or even a few seconds before 50 seconds, this train could not possibly have slowed by more than a fraction of a second the moment of impact. That's just simple mathematics. You can do it. What do you do about the signage theory? It's waived and forfeited about 12 different ways. I think, Your Honor, Rule 56C requires you to identify on summary judgment any factual disputes that are relevant to the district court's resolution of summary judgment. They didn't do that. Rule 56D requires you to file an affidavit explaining what facts are outside of your control that you need in order to oppose summary judgment. They didn't do that. I think they didn't do that because they couldn't possibly file that affidavit, because they're relying on allegations about the nature of the physical environment in the middle of Memorial Park and there was nothing preventing them from going and gathering whatever evidence they wanted to gather about the physical characteristics of this setting. I suspect, actually, they made a strategic decision not to, and to just rest on this videotape. And in any event, there... Can I ask a question? Was there a warning before the girls got anywhere near what happened? Was there a warning by the railroad, a sign that said, you know, don't... Trains come on this track regularly and don't cross over here. Did the railroad warn, in the middle of a big park with lots of business, people to stay off that track over Memorial Drive? Did the railroad put up a sign saying don't do this before they ever got on it? Your Honor, the record is utterly silent about that. There's no evidence one way or the other about the characteristics of the physical environment. But I will point out that under Texas law, there is no duty to warn of open and obvious dangers like a railroad track. Texas has been very clear for a hundred years that a railroad track is its own warning. It's a singular statement of danger in and of itself. And in any event, they bore the burden of proof. If they wanted to make out a theory that was based on premises liability, dangerous condition, premises liability, they had the obligation to put into the summary judgment record some evidence that could sustain that sort of theory. And they just simply haven't. What is the relevance of... I take the waiver point, but if y'all remove and then instantly move for summary judgment, they said this morning, we wanted depositions, this and the other. What's the sort of procedural nature of the waiver? Your Honor, they say maybe if there were affidavits from the crew members and if Union Pacific had moved for that then the record would look differently. It wasn't our obligation to make their case for them or to take notice depositions of our own train crew. Rule 56 is very clear about how you're supposed to do this. And I know that this was an early summary judgment motion, but the federal rules allow that and provide a clear remedy. Under Rule 56 if you think that summary judgment is premature and that there are facts that you need to oppose summary judgment that are outside of your control, you're supposed to file an affidavit under Rule 56D saying what you want and explaining why those facts are outside of your control. And I think they didn't do that because they couldn't hear. But in any event, they didn't even try and it wasn't our obligation. So it seems the best argument for reverse and remand would be that the district court opinion doesn't adequately dispose of proximate cause that there is a jury question. And how do you respond to that? I think that there isn't a jury question on any issue in this case. The district court's analysis at ROA 200, the basic foreseeability analysis drawing on the SISTI case that the train crew is entitled to expect that pedestrians are in possession of their faculties and will move out of the way in response to a horn, makes clear that the railroad had no obligation to foresee this accident. Is there a difference because SISTI is talking about duty rather than proximate cause and it came after a trial to a jury? Your Honor, the Mellon mortgage case from the Texas Supreme Court. Which one? The Mellon mortgage case that the appellants cite in their reply brief from the Texas Supreme Court. The opinion that they cite says that Texas courts quote, frequently use a singular foreseeability analysis interchangeably between duty and proximate cause and also that it makes absolutely no difference in a case like this one which lens you view it through. The appellants, as I understand it, don't at any point in their briefing assign any error to the district court's decision to view this foreseeability issue through a proximate cause lens rather than a duty lens. They in fact want to ride the proximate cause train here but if this court thought that duty was the right lens, I think you would conclude one of two things. Either you would conclude that the district court reached the right result for the right reason and simply applied the wrong label to the analysis in which case there would be no reason for a remand. This court doesn't remand to direct district courts to redact or edit their opinions when there's no new analysis that needs to be done. Or if this court actually wanted to get it right, you would engage with 75.007B which as a matter of Texas statutory law now makes clear that no duties erode to trespassers in any context other than the duty to avoid gross negligence. Is there any statute? I mean, at the end Mr. Gould mentioned something about not going on with some duty that does arise notwithstanding trespass. Is there any duty that arise, any case law about exceptions to 75.007? There is, Your Honor. So their position is that 75.007B only governs premises liability claims but not what they call active negligence claims. But the Texas Supreme Court's opinion in the Borjohn case makes crystal clear that that's not true. In the Borjohn case the  agents engaged in the dangerous high speed car chase. That's what I thought. Of a trespasser around the property causing the trespasser to roll their car and killing three people. And the Texas Supreme Court applied this principle only gross negligence duties erode to trespassers to the facts of that case. There is no way to understand the reasoning or the result in the Borjohn case that makes the distinction that the plaintiffs are arguing. And also the State v. Shoemake case in the Texas Supreme Court considered a different provision of Chapter 75 which was the provision about recreational activities on government land and reached the same conclusion that it applies equally to active negligence and to premises liability claims and there are no exceptions. There is one and only one exception to Chapter 75.007. Gross negligence. Gross negligence or 75.007C creates an exception for artificial hazards that are particularly dangerous to children. And there are I think five sub parts that set up a test. There is no room in that statute for inferring in implicit additional exceptions for special duties owed to trespassers on railroad property and indeed just a couple of days ago the Texas Supreme Court responded to a certification from this court in the Rodriguez case Safeco v. Rodriguez by saying we need not and should not seek the answer from any source other than the statute's plain language. And the same is true here. This court can read that statute and see that it clearly says that there are no duties owed to trespassers other than the avoidance of gross negligence. I don't think that you need the Supreme Court of Texas's help to do that. Mr. Ballinger, can you zoom out with me for a second? Because I don't know if anyone in this case is disputing whether we can do all the things that you're suggesting. It strikes me that the real nub of this case is whether we should do it. And you mentioned Scott v. Harris earlier, which is an immunity case. We deal with that kind of thing all the time. And we have all sorts of rules about being able to affirm summary judgment for any basis, including different ones that the district court gave. That's a great example because the immunity is not just immunity from liability. It's immunity from suit. And so there's all sorts of reasons to do that. The thing I'm struggling with here is not so much the legal questions that you're fighting about. It's the prudential one. Because what happened in the district court is the nightmare fuel of judges. At the end of the day, we have tragically a dead 17-year-old girl and an opinion that we review judgments, not opinions. But we're also a court of review, not first view. And so we're talking about deciding all sorts of questions in the first instance as excuses to pour out a case involving a woman who, a girl who was hit by a train. And I'm really struggling with why we would do that. I understand, Your Honor. And the circumstances are undoubtedly tragic. I think that we are not asking you necessarily to affirm this case on grounds that the district court didn't reach. The first and easiest way to resolve this case is by affirming the district court's analysis at ROA 200 that the railroad was not expected to foresee this danger because the railroad provided inadequate warning. And under Texas law, summarized in the dissent in the Riddle case that the district court cited, but stretching forward 25 years later through SISTE and more recently the Barnes and Areola cases, it is unquestionably the law that train crews are expected to foresee harm to persons who don't receive a warning, but they are not expected to foresee harm to persons who get a warning and make a sudden last-minute dash in front of the train. That is a specific application of a more general point of Texas law, which is that no one is expected to foresee the negligence of others. And I understand why plaintiffs obviously want to emphasize the language about independent intervening cause that the district court also drew from the Riddle dissent at ROA 199, but the analysis on the next page at ROA 200 is correct and at least an alternative holding, and this court can affirm on those grounds. Now, if you wanted to be charitable to the district court, you could even read it as that the independent cause language is just part of a Gestalt proximate cause inquiry. But even if that language was error, there are alternative holdings in the case, and you could affirm. And I think, as I said earlier, the ordinary prudential rule that this court doesn't like to affirm sometimes on alternative grounds that would require the district court to, or that would require this court to engage in new analysis that the district court hadn't done, really isn't applicable here. The plaintiffs accuse us of confusing duty and proximate cause analysis. I actually don't think that's right. I think the Mellon mortgage case makes clear that in Texas both duty and proximate cause have a foreseeability component, and that as for step one foreseeability questions, not Paul's graph questions, but step one foreseeability questions, the analysis is exactly the same. And so if the right answer in this case were that the district court should have framed its sisty point, its point that what happened was not reasonably foreseeable to the train crew as a question of the train crew's duty, then by the time this court got done explaining that fact and why it was true, all of the analysis would have been completed, and there would be nothing left for the district court to do other than to thank this court for its insight and inner judgment. And I think respectfully that makes this the best possible case for affirmance on alternative grounds if that's what you thought you needed to do. I think that Your Honor's point and question have purchased, if at all, on the question of whether or not to reach the statutory question, and I guess I just think that that's the best correct legal resolution of this case, and that it doesn't require anything outside of the core wheelhouse of an appellate court to read that statute and determine what the right answer is, and that you should do it, but I absolutely understand your concern. So if the if that really is right, if the statutory basis is right, and if this young girl's family is going to have to live with a loss, wouldn't it be better to send it back to the district court? You could remove for summary judgment, and you could urge this very ground in front of Judge Lake, and because the thing that I'm still hung up on is that at the end of the day, every case that comes into our court, someone wins and someone loses, and we don't have to deal with cases every day that involve death, and certainly not death of minors, and I'm just wondering if the system isn't better served and the family's not better served by having it done correctly rather than relying on a 1925 dissent and error. Well, Your Honor, I've never had a case like this in my career. But with respect, just don't think that it furthers the interest of justice or anyone's interest to prolong this litigation when it's very clear for multiple independent reasons that it cannot possibly continue as a matter of law. Your Honor, if the court has any questions, more questions, I'd be happy to try. I don't think so. Thank you. Thank you. Mr. Gould. Thank you, Your Honors. Four points in rebuttal. The first is my friend kept saying, look at ROA 200, look at ROA 200. Please do look at ROA 200. I'm going to quote it. The court concludes that riddle is therefore applicable. That was the basis of the district court's opinion. And that was wrong. Under riddle, if that's all that it is, we win on proximate causation. Sure, we think we win on all the grounds, but certainly as to proximate causation. No, you win the potential opportunity to go to trial. Correct. Leaving aside duty and further discovery and so on. Excuse me, Your Honor, and you're absolutely right. When I said we're talking about this potential appeal, and I'm going to get back to that as to point number four. But please do look at ROA 200. The second, about 75 007. My friend says that this has been settled by the Texas Supreme Court in Borjohn v. Rodriguez. Respectfully, we agree with that opinion. The Texas Supreme Court notes 75 007 in a footnote to its opinion. It's not about the railroads. It's not about premises liability versus negligent activity. And Borjohn, which is a per curiam opinion in 2014, what comes later by the Texas Supreme Court? Two landmark cases that, as a plaintiff's attorney representing injured plaintiffs, I'm very well familiar with. United Scaffolding, Occidental. These cases have sharp distinctions between premises liability and ordinary negligence claims. In fact, they have if we charge a jury incorrectly under a theory, it can lead to a reverse and render. The Texas Supreme Court has not resolved this. No other court in the Texas court system has. Third, as to Mellon Mortgage. We both cite Mellon Mortgage. They cited it in their response brief. We cited it in our reply brief. It's a plurality opinion. And Mellon Mortgage, it's true, they talk about the similarities between duty and proximate cause. They also say it's also often they're overlapping. Sometimes they're applied in an overlapping and confusing way. That's what happened here. A lot of times, the foreseeability, what you're looking at is, is there a duty in the first instance? Right? But here we already have well-established duties that date back to before the 1900s. So we're not really having to look at foreseeability for that. The final point is the prudential consideration that, you know, Judge Oldham brought up and Judge Jones, you kind of hinted at this when you said, you know, we win the potential opportunity to go back to a jury. You know, that's important to us. In their response brief, you know, they end it by implying that we're coming to this court asking for sympathy. And that's not at all this case. We're here just asking for justice. And what justice is here is the recognition that when the district court renders an opinion that rests on an incorrect legal conclusion and faulty analysis, the proper thing to do is to send it back to the district court for further proceedings. We readily acknowledge that Union Pacific may move for summary, excuse me, they will move for summary judgment. And we're going to have to respond to that at the appropriate time. But that doesn't mean that based on the district court's faulty opinion that we shouldn't get that chance. You know, that's what we're asking for, is that the district court squarely got this wrong and all we're asking is for this court to do what it does in countless cases, which is say respectfully, the district court got it wrong and we're just going to remand for further proceedings. That's all we're seeking from this court. The court has no further questions. Thank you, sir. Thank you, Your Honor. All righty.